An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-792

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

v.                                    Guilford County
                                      No. 11 CRS 85063
JOHN MARKEITH JOHNSON


Appeal by defendant from judgment entered 12 December 2012 by Judge Steve A. Balog in Guilford County Superior Court. Heard in the Court of Appeals 30 December 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*
>
> *M. Alexander Charns for defendant-appellant.*


HUNTER, JR., Robert N., Judge.


Defendant appeals from a judgment entered upon his conviction for assault inflicting serious bodily injury. We find no error.

Evidence at trial establishes the following factual background. Joseph Carter, the victim, knew defendant because Mr. Carter dated Lisa Bethea, the grandmother of defendant's

son, for approximately eight years. Mr. Carter described his relationship with defendant as friendly.

In late July of 2011, Mr. Carter borrowed twenty dollars from defendant. He repaid defendant thirty dollars approximately a week and a half later. On 17 August 2011, Mr. Carter went to the home of Lisa Bethea's daughter, Tasha Bethea. Defendant arrived shortly thereafter. Defendant asked Mr. Carter for an additional twenty dollars, and Mr. Carter replied that he did not have it and did not owe defendant any more money. Defendant became angry, belligerent, and threatening, but Mr. Carter tried to ignore him.

Mr. Carter left Tasha Bethea's house and walked to Lisa Bethea's house, approximately five minutes away. Defendant appeared a few minutes later and demanded to speak to Mr. Carter. The two spoke privately in a bedroom, and defendant told Mr. Carter that there would be "consequences" if he did not pay defendant. As Mr. Carter turned to leave, defendant struck him on the left side of his face. After Mr. Carter fell to the floor, he felt "about three or four more blows about my face and head[.]" Lisa Bethea then entered the room, got between defendant and Mr. Carter, and ordered defendant to leave her house. Mr. Carter went to the hospital and subsequently spoke

to police about the incident. The parties entered a stipulation that Mr. Carter suffered serious bodily injury.

Defendant later called Mr. Carter in an attempt to have him drop the charges. He said that it would be in everybody's interest if Mr. Carter dropped the charges, that he did not want to go to jail, and that he would pay Mr. Carter to say he was not the assailant. Shortly thereafter, Mr. Carter received a threatening text message from defendant. A few weeks before trial, defendant again told Mr. Carter to drop the charges and to make up a story about the assault.

Lisa Bethea testified that she and Mr. Carter were friends, but were never romantically involved. Ms. Bethea stated that Mr. Carter was at her home on 17 August 2011, but denied that defendant was there. She denied having any knowledge of the assault.

On 12 December 2012, a jury found defendant guilty of assault inflicting serious bodily injury. The trial court sentenced defendant to an active term of 17 to 21 months imprisonment. Defendant appeals.

Defendant solely argues that the trial court erred by failing to intervene when the prosecutor characterized him as a "loan shark" during his closing argument. During closing

argument, the prosecutor made the following statements, which defendant challenges on appeal:

> Clearly, Mr. Carter had no idea that he was dealing with a loan shark. Because that's essentially what a loan shark does. He gives you money and he threatens use of violence until he thinks you're done paying. And that's what happened in this case.
>
> . . . .
>
> Loan sharking, the use of threat to extract money. Part and parcel of the job title. Exactly what the defendant did.

Defendant contends that "[c]alling someone a loan shark is a slander that conjures up mob ties," and that the characterization was prejudicial because there was no evidence that defendant was involved with organized crime.

In the instant case, defendant did not object to the prosecutor's use of the term "loan shark." "The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002). "In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to

protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord[.]" *Id.*

We disagree that the prosecutor's comment rose to the level of extreme impropriety. First, the record is devoid of any evidence linking defendant to organized crime, and the prosecutor did not make any such suggestion. Second, a "loan shark" is defined as "one who lends money to individuals at exorbitant rates of interest." Merriam-Webster's Collegiate Dictionary p. 638 (10th ed. 1995). This definition notably lacks any organized crime component, and as the State points out, defendant did in fact loan Mr. Carter money which was repaid less than two weeks later with 50% interest. Finally, even if the characterization was improper, it has little bearing on the offense for which defendant was being tried, assault inflicting serious bodily injury. The parties stipulated that Mr. Carter sustained serious bodily injury, and thus, the only issue at trial was whether defendant committed assault on Mr. Carter. The jury evidently believed Mr. Carter's version of the events and was not persuaded by Ms. Bethea. Based on our review of the record, we have a difficult time believing that the prosecutor's use of the term "loan shark" tipped the balance and

prejudiced defendant. Accordingly, we find no error in the trial court's failure to intervene *ex mero motu*.

No error.

Chief Judge MARTIN and Judge DILLON concur.

Report per Rule 30(e).